**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert E Bennett, et al., | No. CV-19-08001-PCT-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Kingman, | |
| Defendant. | |

Before the Court are Plaintiffs Robert and Judith Bennett's (collectively, the "Bennetts") Request for Writ of Mandamus Motion to Void Kingman City Ordinance 1471 (Doc. 40) and Motion for Partial Summary Judgment (Doc. 48), and Defendant City of Kingman's (the "City") Motion for Summary Judgment (Doc. 47). The Court now rules.[1]

**I.   BACKGROUND**

The Bennetts own five acres of real property in Mohave County, Arizona (the "Property"). (Doc. 23 ("FAC") ¶ 1.) Storage units exist on the eastern portion of the Property; the remaining 3.4 acres of land are unimproved. (*Id.* ¶¶ 9–10.) The Bennetts intend to one day expand their storage business onto the unimproved portion of their land. (*Id.* ¶ 11.) That expansion, or lack thereof, is at the heart of this case.

The facts relevant to this case date back to 2003, when the Kingman City Council considered annexing certain unincorporated land, including the subject Property. The City obtained the Bennetts' written consent, which, according to the Bennetts, was conditioned

---
[1] The Court finds the pending motions appropriate to resolve without oral argument. *See* LRCiv 7.2(f).

on the City's verbal promise that they could someday build additional storage units on the Property. (*Id.* ¶ 17; Doc. 52 at 19.)[2] The City annexed the Property shortly thereafter. (Doc. 47–1 ¶ 6.)

The City Council then amended the Kingman Zoning Ordinance by establishing a C-2-HMR zoning district. (FAC ¶ 19; Doc. 26 ¶ 19.) Building storage units, like those on the Property, is not permitted on C-2-HMR property. (FAC ¶ 21; Doc. 26 ¶ 19.) In 2005, the City Council passed Ordinance 1471, which rezoned certain commercial land, including the Bennetts' Property, to C-2-HMR. (FAC ¶ 20; Doc. 47–1 ¶¶ 11–13.)

Seven years later, in September 2012, the Bennetts learned that Ordinance 1471 had been passed and that their land had been rezoned. (FAC ¶ 88.) In 2013, the Bennetts applied for a conditional use permit ("CUP") to build additional storage units on the Property. (*Id.* ¶ 25.) The Bennetts also asked the City to rezone the Property back to C-2 Commercial Community Business. (*Id.* ¶ 27.) The City Council denied the rezoning request but passed an ordinance allowing storage units to be constructed on C-2-HMR property if a landowner obtained a CUP. (*Id.* ¶ 30.) The Council then approved the Bennetts' CUP application. (*Id.*; Doc. 52 at 68–74.)

By the terms of the Kingman Zoning Ordinance, the Bennetts' CUP would expire if they did not receive a building permit one year from the date of approval. *See* Kingman, Ariz., Kingman Zoning Code § 29.410(1). This one-year expiration is common to all CUPs issued by the City of Kingman. *Id.* Due to engineering delays, the Bennetts sought, and the City approved, two one-year extensions of the CUP. (FAC ¶¶ 33–41.) In 2016, the Bennetts sought a third extension. (*Id.* ¶ 43.) The Planning and Zoning Commission held a public hearing on the Bennetts' request and unanimously recommended denying the extension. (Doc. 52 at 97–98.) On January 3, 2017, the City Council considered the request at a public

---

[2] The City asks the Court to take judicial notice of City Council's meeting minutes under Rule 201 of the Federal Rules of Evidence. (Doc. 58 at 2.) The Court may take judicial notice of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The City Council's meeting minutes satisfy Rule 201 and judicial notice will be taken. *See Nasrawi v. Buck Consultants, LLC*, 713 F. Supp. 2d 1080, 1083 n.4 (E.D. Cal. 2010) (taking judicial notice of a public agency's board meeting minutes).

hearing. (*Id.*) A Development Services Director gave a presentation on the issue, and the City subsequently allowed public comment. (*Id.*) Four residents addressed the City Council. (*Id.*) Each resident opposed the Bennetts' request, citing concerns of trash accumulation, increased traffic, negative impacts on surrounding property values, and threats to neighborhood safety. (*Id.*) The City Council unanimously voted to deny the Bennetts' request for extension. (*Id.* at 99.) Two days later, on January 5, 2017, the CUP expired. The Bennetts applied for a new CUP in 2018. (FAC ¶ 51.) On November 6, 2018, after a public hearing, the City denied their application. (*Id.* ¶ 52; Doc. 52 at 100–02.)

The Bennetts initiated this action on January 2, 2019. (Doc. 1.) Their First Amended Complaint ("FAC") alleges six claims for relief: (1) violation of the federal Takings Clause; (2) violation of the Arizona Constitution's Takings Clause; (3) vested rights violation; (4) Due Process Clause violation under 42 U.S.C. § 1983; (5) taking without just compensation under 42 U.S.C. § 1983; and (6) breach of contract. (Doc. 23.) The Bennetts, who are now proceeding *pro se*, have filed a Request for Writ of Mandamus to Void Kingman City Ordinance 1471 (Doc. 40), to which the City filed a response (Doc. 54). The Bennetts have also moved for partial summary judgment. (Doc. 48.) The City moves for summary judgment on all claims. (Doc. 47.) The Court will first address the Bennetts' request for mandamus relief. An evaluation of the summary judgment motions follows.

## II.   WRIT OF MANDAMUS

The Bennetts request mandamus relief to void the City's annexation of the Property and Ordinance 1471. (Doc. 40.) The Bennetts do not clearly articulate whether they seek mandamus under federal or state law. For purposes of evaluating the motion, the Court will first apply federal law.

The Federal Mandamus Act, 28 U.S.C. § 1361, "provides district courts with mandamus power 'to compel an officer or employee *of the United States or any agency thereof* to perform a duty owed to the plaintiff.'" *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (quoting 28 U.S.C. § 1361) (emphasis added). "Federal courts have no jurisdiction or authority"—under the Federal Mandamus Act—"to issue

mandamus to direct non-federal entities or officials in the performance of their duties." *Andrade v. Cal. Dep't of Corr.*, No. 5:21-CV-00202, 2021 WL 412267, at *1 (C.D. Cal. Feb. 4, 2021) (citations omitted); *see also Clark v. Washington*, 366 F.2d 678, 681 (9th Cir. 1966) ("The federal courts are without power to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties . . . ."); *Fox v. City of Pasadena*, 78 F.2d 948, 950 (9th Cir. 1935) (concluding a district court has no jurisdiction to issue a writ of mandamus to transfer funds in a city's treasury from the general fund to the district fund); *Amisub (PSL), Inc. v. Colo. Dep't of Soc. Servs.*, 879 F.2d 789, 790 (10th Cir. 1989) ("No relief against state officials or state agencies is afforded by § 1361."). The City is neither an "officer or employee of the United States" nor an "agency thereof." *See* 28 U.S.C. § 1361. The Court therefore denies the Bennetts' request for mandamus relief to the extent it derives from the Federal Mandamus Act.

To the extent that the Bennetts seek relief under Arizona law, the Court declines to exercise supplemental jurisdiction. Federal courts "have supplemental jurisdiction over all other claims that are so related to [the original jurisdiction claims] that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). District courts may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the [original jurisdiction claims], (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances." *Id.* § 1367(c).

Grounds to decline supplemental jurisdiction over a mandamus action arising under Arizona law exist under factors one and four. Specifically, "[c]onsiderations of federalism and comity, not generally present with typical 'pendent' state claims, loom large in the case of state mandamus proceedings." *Clemes v. Del Norte Cnty. Unified Sch. Dist.*, 843 F. Supp. 583, 596 (N.D. Cal. 1994), *overruled on other grounds by Maynard v. City of San Jose*, 37 F.3d 1396, 1403–04 (9th Cir. 1994). "Mandamus proceedings to compel a state [or municipal entity] to act are actions that are uniquely in the interest and domain of state courts." *Id.* A federal court should not, through the exercise of supplemental jurisdiction,

impose itself on such matters. *Id.*; *see also Tomlinson v. Cnty. of Monterey*, No. C-07-00990, 2007 WL 2298038, at *2 (N.D. Cal. Aug. 8, 2007) (declining supplemental jurisdiction over state mandamus claim). And the Court will not do so here. Accordingly, the Court will dismiss the Bennetts' mandamus request without prejudice so that they may renew the claim, if they so choose, in state court.

### III.   SUMMARY JUDGMENT MOTIONS

Both parties have moved for summary judgment. The Bennetts move for summary judgment on their vested interest and Due Process Clause claims.[3] The City moves for summary judgment on all claims. As a threshold matter, the Bennetts argue that the Court should not consider the merits of the City's summary judgment motion because it was filed one day after the dispositive motion deadline expired. (Doc. 51.) The Court agrees that the City's motion was untimely but otherwise rejects the Bennetts' request. (*See* Doc. 37 at 2.)

When a party fails to timely act, a court may extend the time to act—and thereby consider an untimely motion—for good cause if that party failed to act because of excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B). "To determine whether a party's failure to meet a deadline constitutes 'excusable neglect,'" the Court "must apply a four-factor equitable test, examining: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Rule 6(b)(1)(B), "like all the Federal Rules of Civil Procedure, is to be liberally construed to effectuate the general purpose of seeing that cases are tried

---

[3] The Bennetts also move for summary judgment on a newly alleged Equal Protection claim. (Doc. 48 at 1.) The Bennetts did not plead an Equal Protection claim in the Amended Complaint. (Doc. 23.) "To prevail on an Equal Protection claim, plaintiffs must show that a class that is similarly situated has been treated disparately." *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 966 (9th Cir. 2017) (internal quotations and citations omitted). These elements are not common to constitutional Takings Clause claims, Due Process claims, or the state-law claims alleged by the Bennetts. Adding an Equal Protection claim at the summary judgment stage, and after the close of discovery, would prejudice the City who would be required to develop a different defense to oppose this newly alleged claim. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). Accordingly, the Court will not allow the Bennetts to proceed on their newly alleged Equal Protection claim.

on the merits." *Id.* at 1258–59 (internal quotations and citations omitted). "Mindful that a district court abuses its discretion if it does not consider each of the four *Pioneer* factors separately, . . . this court will do exactly that." *Gabaldon v. City of Peoria*, No. CV12-01612, 2013 WL 5428755, at *6 (D. Ariz. Sept. 27, 2013) (internal quotations and citations omitted); *see also Ahanchian*, 624 F.3d at 1261.

First, there is minimal to no prejudice to the Bennetts. The Bennetts responded to the substance of the City's summary judgment motion and had adequate time to do so. (Doc. 53.) Second, the length of the delay is minimal: the City filed its motion one day after the deadline expired. Third, counsel for the City has explained that her conduct in this case stems from, among other things, the effects of a medical condition and caring for a sick family member. (Doc. 57.) And fourth, there is no evidence suggesting that the City acted in bad faith. Thus, based on the *Pioneer* factors, the Court finds that the City acted with excusable neglect. The Court will therefore evaluate the merits of the City's motion for summary judgment.

### A. Legal Standard

Summary judgment is appropriate if the evidence demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment must "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the

absence of . . . a genuine dispute." Fed. R. Civ. P. 56(c)(1).

Where, as here, "parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and internal quotations omitted). The summary judgment standard operates differently depending on whether the moving party has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322–23. As the party with the burden of proof, a plaintiff "must establish beyond controversy every essential element" of its claims based on the undisputed facts. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (internal quotations omitted). A defendant, by contrast, is entitled to summary judgment where it shows that a plaintiff cannot establish at least one element of a claim considering the undisputed material facts. *Celotex Corp.*, 447 U.S. at 322–23.

**B.     Discussion**

The Court will first assess the Bennetts' federal claims.

### 1.     Federal Claims

The Bennetts assert two federal claims under 42 U.S.C. § 1983 for violations of the Takings Clause and Due Process Clause of the United States Constitution. (FAC ¶¶ 69–85.) In addition to the § 1983 claims, the Bennetts assert a separate "Federal Takings Clause" claim. (*Id.* ¶¶ 53–57.) Because § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred," *see Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotations omitted), the Court will treat the Bennetts' "Federal Takings Clause" claim (Count I) and "Violation of 42 U.S.C. § 1983 – Taking Without Just Compensation" claim (Count V) as a single cause of action. The City argues it is entitled to summary judgment on the Bennetts' federal claims on multiple grounds. The Court begins its analysis with the statute of limitations.

#### a.     Statute of Limitations

The Court, at the outset, emphasizes that the Bennetts have not precisely articulated which acts give rise to their Takings Clause claim.[4] (FAC ¶ 56.) The Court has reviewed

---

[4] The City did not challenge the sufficiency of the First Amended Complaint at the pleadings stage of this case.

the First Amended Complaint and concludes that the Bennetts' federal Takings claim could stem from three different events. First, in February 2005, the City enacted Ordinance 1471, which rezoned the Bennetts' property. (*Id.* ¶ 20.) Second, in January 2017, the City denied the Bennetts' request to extend the CUP. (*Id.* ¶ 43.) Third, in November 2018, the City denied the Bennetts' renewed CUP application. (*Id.* ¶ 52.)

The facts forming the basis of the Bennetts' Due Process Clause claim are more precisely pled. The Bennetts allege that they have constitutionally protected property interests "in the Property and the CUP" issued by the City in 2013. (*Id.* ¶ 71.) They argue that the City "deprived [them] of due process of law" by "refus[ing] to extend the previously awarded CUP." (*Id.* ¶ 75.)

The City argues that the Bennetts' federal claims "must be based on conduct that occurred after January 2, 2017." (Doc. 47 at 16.) The Court agrees. "Section 1983 does not contain its own statute of limitations." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *see* 42 U.S.C. § 1983. Absent a federal limitations period, this Court must "borrow the statute of limitations for § 1983 claims applicable to personal injury claims in the forum state." *TwoRivers*, 174 F.3d at 991. Arizona is the forum, and Arizona courts "apply a two-year statute of limitations to § 1983 claims." *Id.*; *see also Marks v. Parra*, 785 F.2d 1419, 1420 (9th Cir. 1986) (citing A.R.S. § 12-542). Although Arizona law supplies the limitations period, "federal, not state, law determines when a civil rights claim accrues." *TwoRivers*, 174 F.3d at 991. "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.*

Here, a § 1983 claim arising from the City's adoption of Ordinance 1471 is barred by the statute of limitations. The City adopted the Ordinance in 2005. (FAC ¶ 20.) The Bennetts discovered their land had been rezoned in September 2012, and thus their claim accrued at that time.[5] (Doc. 53 at 3.) *See TwoRivers*, 174 F.3d at 991. The limitations period

---

[5] The Bennetts offer two different accounts as to when they first learned that their land had been rezoned. On one hand, Mr. Bennett says he learned of the zoning change in September 2012. (Doc. 53 at 3.) On the other, he asserts that he "found out about this rezone in 2020." (Doc. 48 at 2.) Because the Bennetts submitted a rezoning request and a CUP application to the City in 2013, and City Council's October 15, 2013 meeting minutes, which are judicially noticeable, provide that the Bennetts sought "approval of a [CUP] to expand a

- 8 -

expired two years later, in 2014. Because the Bennetts waited until January 2019 to initiate this case, their § 1983 claims are time barred to the extent they stem from Ordinance 1471.

As to the remaining alleged acts, the City declined extending the Bennetts' CUP on January 3, 2017. (Doc. 48 at 2.) The City denied the Bennetts' application for a new CUP on November 6, 2018. (FAC ¶ 52.) These events occurred within two years of this lawsuit, which the Bennetts filed on January 2, 2019. (Doc. 1.) Thus, the Bennetts' Due Process Clause claim—which stems only from the City's refusal to extend their CUP—survives the statute of limitations. Their Takings Clause claim survives to the extent it arises from the City's refusal to extend the CUP or the City's denial of the CUP application.

### b. Takings Clause Claim

Only the City moves for summary judgment on the Bennetts' federal Takings Clause claim. (Doc. 47 at 11.) To be entitled to summary judgment, the City must show that the Bennetts cannot establish at least one element of their Takings Clause claim considering the undisputed material facts of the case. *Celotex Corp.*, 477 U.S. at 322–23.

In the Ninth Circuit, courts "use a two-step analysis to determine whether a constitutional 'taking' has occurred." *Bowers v. Whitman*, 671 F.3d 905, 912 (9th Cir. 2012). First, the Court "determine[s] whether the subject matter is 'property' within the meaning of the Fifth Amendment." *Id.* Second, the Court assesses "whether there has been a taking of that property, for which compensation is due." *Id.*

### i. Property Interests

For Takings Clause purposes, property interests "'are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law.'" *Bowers*, 671 F.3d at 912 (quoting *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972)). To be cognizable under the Takings Clause, a constitutionally protected property right must be vested. *See id.* (citing *United States v. Sioux Nation*, 448 U.S. 371 (1980), and *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980), and then *Lynch v. United States*, 292 U.S. 571 (1934)). "To determine whether a property

---

mini-storage complex . . . on property zoned C-2-HMR," the Court takes Mr. Bennett's statement that he learned about the rezone in 2012 as true.

- 9 -

interest has vested for Takings Clause purposes, the relevant inquiry is the certainty of one's expectation in the property interest at issue." *Id.* at 913 (internal quotations omitted). As noted, two alleged property interests could form the basis of the Bennetts' federal Takings Clause claim: (1) their interest in the CUP issued in 2013, and (2) their interest in having the 2018 CUP application granted. The Court will address each interest in turn.

The City argues the Bennetts do not possess a "constitutional right to the [CUP] because it was subject to the contingencies and discretionary character of [the Kingman Zoning Code]." (Doc. 47 at 14.) The City is correct that, if a "property interest is 'contingent and uncertain' or the receipt of the interest is 'speculative' or 'discretionary,' then the government's modification or removal of the interest will not constitute a constitutional taking." *Bowers*, 671 F.3d at 913 (quoting *Engquist v. Or. Dep't of Argic.*, 478 F.3d 985, 1002 (9th Cir. 2007), *aff'd*, 553 U.S. 591 (2008)). But, a property interest in a zoning permit, like a CUP, is analogous to a right to a particular land use. *Id.* at 915. An interest in a particular land use may constitute a protected property interest if it "has vested in equity based on principles of detrimental reliance." *Id.* at 915–16 (quoting *Lakeview Dev. Corp. v. City of South Lake Tahoe*, 915 F.2d 1290, 1295 (9th Cir. 1990)). The Bennetts assert, and the City does not dispute, that after the CUP was issued the Bennetts spent more than "fifty thousand dollars . . . for site plans[,] [b]uilding plans, septic system plans, soil reports, [and] surveys" and "receiv[ed] a grading permit to start [construction]." (Doc. 48 at 2–3; Doc. 48, Ex. 13.) Construing this evidence in favor of the Bennetts, as this Court must, the Court concludes that there is a genuine issue of material fact as to whether the Bennetts' interest in the CUP vested in equity based on principles of detrimental reliance.

As to the second alleged interest—having their CUP application granted—the Bennetts' Takings Clause claim fails as a matter of law. Protected property interests do not arise from mere desires or unilateral expectations: there must be a legitimate claim of entitlement. *Roth*, 408 U.S. at 577. After submitting their CUP application, the Bennetts were "subject to the inherently unpredictable and often politicized process of seeking permission from a local legislative body to conduct certain activity on a piece of property."

*See Aegis of Ariz., L.L.C. v. Town of Marana*, 206 Ariz. 557, 569 (App. 2003). Given this uncertainty, the Bennetts could not have a "legitimate claim of entitlement" to having their CUP application granted. *See Roth*, 408 U.S. at 577; *Aegis of Ariz., L.L.C.*, 206 Ariz. at 569 (concluding a plaintiff "had no protected property interest in having its CUP application granted"). Moreover, the Bennetts have not presented evidence to create a triable issue as to whether their interest in having the application granted vests in equity. The only alleged acts of reliance relate to the 2013 CUP. No acts of reliance stem from the 2018 application. Thus, the City is entitled to summary judgment on the Bennetts' federal Takings Clause claim to the extent it arises from the City's denial of their CUP application.

### ii. Regulatory Takings Framework

Even though a genuine factual issue exists as to the Bennetts' property interest in the CUP, the City may nonetheless be entitled to summary judgment if no reasonable jury could find that the City's refusal to extend the CUP constitutes a compensable taking. *See Celotex Corp.*, 447 U.S. at 322–23. A taking, in its classic form, occurs when the "government directly appropriates private property or ousts the owner from his domain." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005). Because the act in this case is not a classic taking, the Court must assess whether the City's refusal to extend the Bennetts' CUP amounts to a regulatory taking. *See id*. The Supreme Court has recognized three types of regulatory takings. *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020). The City contends that the Bennetts cannot "establish a taking under any of the recognized categories." (Doc. 47 at 14.) The Court agrees.

"Two types of regulatory action—*Loretto* and *Lucas* takings—are *per se* takings." *Bridge Aina Le'a, LLC*, 950 F.3d at 625. To constitute a *Loretto* taking, the government must "require[] an owner to suffer a permanent physical invasion of [his or] her property." *Lingle*, 544 U.S. at 538 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)). The Bennetts did not suffer a permanent physical invasion of their property, and thus *Loretto* does not apply. A *Lucas* taking occurs when a regulation "completely deprive[s] an owner of '*all* economically beneficial us[e]' of [his or] her property." *Id.*

(quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992)). *Lucas* takings are "relatively rare" and "confined to the 'extraordinary circumstance when *no* productive or economically beneficial use of land is permitted.'" *Bridge Aina Le'a, LLC*, 950 F.3d at 626 (quoting *Lucas*, 505 U.S. at 1017). The instant matter is not "the 'extraordinary case' in which a regulation permanently deprives property of all value." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 332 (2002). The Bennetts developed and continue to operate a storage business on the eastern portion of the Property. (FAC ¶ 9.) And the Kingman Zoning Ordinance permits other economically viable uses of the western portion of the Property. (Doc. 52 at 110–11.) Kingman, Ariz., Kingman Zoning Code § 14.600 (listing a variety of permitted land uses, including "[g]eneral offices," "[r]eal estate and title offices," and "[a]ntique shops"). Accordingly, *Lucas* is inapplicable.

In addition to the two types of *per se* regulatory takings, the Supreme Court has recognized a third category of regulatory takings, known as *Penn Central* takings. *See Bridge Aina Le'a, LLC*, 950 F.3d at 630. Under *Penn Central*, courts consider three factors: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). "The first and second *Penn Central* factors are the primary factors." *Bridge Aina Le'a, LLC*, 950 F.3d at 630. The "consideration of these factors aims 'to determine whether a regulatory action is functionally equivalent to the classic taking.'" *Id.* (quoting *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1120 (9th Cir. 2010) (en banc) (internal quotations omitted)).

Under the first *Penn Central* factor, courts "compare the value that has been taken from the property with the value that remains in the property." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Put differently, the "economic impact" of a government action "is determined by comparing the total value of the affected property before and after the government action." *Id.* at 451. This comparison "aims 'to identify regulatory actions that are functionally equivalent to the classic taking in which

government directly appropriates private property or ousts the owners from his domain." *Bridge Aina Le'a, LLC*, 950 F.3d at 631 (quoting *Lingle*, 544 U.S. at 539).

Here, the Bennetts provide no evidence as to the impact of City's refusal to extend the CUP on the total value of their land. The Court is mindful that the Bennetts would have likely received additional income had their businesses expanded. "But the mere loss of some income because of regulation does not itself establish a taking." *Colony Cove Props., LLC*, 888 F.3d at 451; *see also Laurel Park Cmty., LLC v. City of Tumwater*, 698 F.3d 1180, 1189 (9th Cir. 2012) ("A small decrease in value . . . falls comfortably within the range of permissible land-use regulations that fall far short of a constitutional taking."). Moreover, when, as here, "an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking." *Colony Cove Props., LLC*, 888 F.3d at 450 (quoting *Andrus v. Allard*, 444 U.S. 51, 65–66 (1979)). Accordingly, the Court finds that the Bennetts have not presented sufficient evidence to create a triable issue of fact as to the economic impact of the City's refusal to extend their CUP.

The Court turns to the second *Penn Central* factor: distinct investment-backed expectations. 438 U.S. at 124. "To form the basis of a taking claim, a purported distinct investment-backed expectation must be objectively reasonable." *Colony Cove Props., LLC*, 888 F.3d at 452. Such an expectation "implies reasonable probability." *Guggenheim*, 638 F.3d at 1120. "Thus, 'unilateral expectation[s]' or 'abstract need[s]' cannot form the basis of a claim that the government has interfered with property rights." *Bridge Aina Le'a, LLC*, 950 F.3d at 633–34 (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005 (1984) (citation omitted)).

When the Bennetts purchased the Property, it was beyond the City's municipal boundaries and therefore not subject to the City's zoning laws. (FAC ¶¶ 7–8.) The Bennetts developed a portion of the Property into a storage business. (*Id.* ¶ 9.) The City's zoning laws now foreclose the Bennetts' ability to expand their business without first obtaining a CUP. (*Id.* ¶¶ 20–21.) In 2013, the Bennetts obtained a CUP allowing the expansion of their business. (*Id.* ¶ 30.) Although the Bennetts do not expressly connect the argument to their

Takings Clause claims, they assert that they "spent in excess of $50,000 for the plans[] to expand the storage complex." (Doc. 48 at 3.)

The Bennetts' expectation of expanding their business is speculative. In addition to obtaining a CUP, expansion was contingent on the Bennetts' ability to, among other things, secure financing, procure site plans, and obtain necessary building permits. The Bennetts, in their First Amended Complaint, admit that they were initially "forced to request an extension for the CUP" because the engineering company they hired "did not have a satisfactory set of plans." (FAC ¶¶ 34–35.) The Bennetts further disclose that those "delays resulted in a loss of [] private financing." (*Id.* ¶ 40.) Considering these facts, the Court concludes that the expansion of the Bennetts' business was merely "a speculative possibility, not an 'expectation.'" *See Guggenheim*, 638 F.3d at 1120. Moreover, as the Supreme Court wrote in *Penn Central*, "'[t]aking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated." 438 U.S. at 130. The Bennetts retain the ability to operate their storage business on the eastern portion of the Property. (FAC ¶ 9.) "[T]he submission that [the Bennetts] may establish a 'taking' simply by showing that they have been denied the ability to exploit a property interest that they heretofore had believed was available for development is quite simply untenable." *See Penn Cent. Transp. Co.*, 438 U.S. at 130. Therefore, the Court concludes that the Bennetts have not presented sufficient evidence to raise a triable question of fact as to a distinct investment-backed expectation.

Finally, the Court considers the character of the City's action. *Penn Cent. Transp. Co.*, 438 U.S. at 124. "*Penn Central* instructs that [a] taking may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Colony Cove Props., LLC*, 888 F.3d at 454 (internal quotations and citation omitted). No physical invasion by the City exists in this case. Instead, the alleged taking, as noted, is the City's refusal to extend the Bennetts' CUP. Before deciding to deny the Bennetts' extension request, the City

"conducted a hearing, received input from the community and made a reasoned determination that a third renewal of the permit was not in the interest of Kingman or the health, safety and welfare of its citizens." (Doc. 47 at 17; *See* Doc. 52 at 97–98.) The Supreme Court has upheld "land-use regulations that destroyed or adversely affected recognized real property interests" when, as here, the relevant government entity "reasonably concluded that 'the health, safety, morals, or general welfare' would be promoted by prohibiting particular contemplated uses of land." *Penn Cent. Transp. Co.*, 438 U.S. at 125; *see e.g.*, *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365 (1926) (upholding a zoning ordinance even though the plaintiff-property owner who intended to use its property for industrial purposes was affected far more severely than its neighbors who wished to use their land differently). And "[a] claim brought under the federal Constitution charging the taking or deprivation of property . . . cannot be premised solely on the charge that the government . . . revoked a once valid permit." *Lakeview Dev. Corp.*, 915 F.2d at 1295. Thus, the third factor does not support the Bennetts' claim.

Having construed the evidence in the light most favorable to the Bennetts, the Court concludes that no reasonable jury could find that the City's refusal to extend the CUP is a compensable taking under *Penn Central*. Accordingly, the City is entitled to summary judgment on the Bennetts' federal Takings Clause claim.

### c. Due Process Clause Claim

Both parties move for summary judgment on the Bennetts' Due Process Clause claim. The Fourteenth Amendment's Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Bennetts invoke the Due Process Clause's procedural and substantive protections. (FAC ¶¶ 72–74.)

### i. Procedural Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause . . . ." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Accordingly,

procedural due process claims have two elements: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Here, the Bennetts assert that they have a protected property interest in the CUP issued in 2013. (FAC ¶¶ 75, 80.) When analyzing the Bennetts' Takings Clause claim, the Court concluded that a genuine issue of material fact exists as to whether the Bennetts' interest in the CUP is a constitutionally protected property interest.[6] *Supra* Part III.B.1.b.i. Accordingly, because the Bennetts cannot, at this stage, "establish beyond controversy every essential element" of their due process claim, the Bennetts are not entitled to summary judgment. *See S. Cal. Gas Co.*, 336 F.3d at 888.

Despite this genuine issue of material fact, the City may nevertheless be entitled to summary judgment if no reasonable jury could conclude that the City deprived the Bennetts of the CUP without due process of law. *See Celotex Corp.*, 447 U.S. at 322–23. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The City argues no due process violation exists because the City Council "conducted a hearing, received input from the community and made a reasoned determination that a third renewal of the permit was not in the interest of Kingman or the health, safety and welfare of its citizens." (Doc. 47 at 17.) The record indicates that the Planning and Zoning Commission held a public hearing on the Bennetts' request for extension on December 13, 2016 and unanimously voted to recommend denial of the extension. (Doc. 52 at 97–98.) On January 3, 2017, the City Council considered the extension request at a public hearing. (*See id.*) A Development Services Director gave a presentation on the issue, and the City subsequently allowed public comment. (*Id.*) Four residents addressed the City Council. (*Id.*) Each resident opposed the Bennetts' request, citing, among other things, concerns of trash accumulation on the Property and negative

---

[6] The Bennetts do not appear to allege that the City's denial of their CUP application violated their due process rights. To the extent the Bennetts do assert such a claim, the City is entitled to summary judgment because the Bennetts had no constitutionally protected property interest in having the application granted. *See supra* Part III.B.1.b.i.

- 16 -

impacts on surrounding property values. (*Id.*) The Bennetts do not dispute these facts. Nor do the Bennetts present any evidence to substantiate their allegation that the City's refusal to extend the previously awarded CUP deprived them of due process of law. Instead, the Bennetts center their argument on the process the City provided when adopting Ordinance 1471. (*See* Doc. 53 at 8.) But a due process claim arising from Ordinance 1471 is barred by the statute of limitations. *Supra* Part III.B.1.a. The Court therefore finds that the Bennetts have not raised a genuine issue of material fact as to whether the City denied them adequate procedural protections when refusing to extend their CUP. Accordingly, the City is entitled to summary judgment on the Bennetts' procedural due process claim.

### ii. Substantive Due Process

The Bennetts also invoke the substantive protections of the Due Process Clause. (FAC ¶ 73.) Substantive due process affords "heightened protection against government interference with certain fundamental rights." *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Such rights are generally confined to "matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright*, 510 U.S. at 272. When a fundamental right is not implicated, government action need only have a rational relationship to a legitimate state interest to survive a substantive due process challenge. *See Bowers*, 671 F.3d at 916. Here, the Bennetts do not assert that the City deprived them of a fundamental right. Rather, they only assert interests in the Property, itself, and the CUP. (FAC ¶ 71.) *See Lakeview Dev. Corp.*, 915 F.2d at 1295 ("[T]here is no federal Constitutional right to be free from changes in land use law."). The City's action is therefore subject to rational basis review. *See Nelson v. City of Selma*, 881 F.2d 836, 838–39 (9th Cir. 1989) (applying rational basis review to a city's zoning-related actions). That is, the City's decision to deny the Bennetts' extension request "should be upheld if it bears a rational relationship to a legitimate state interest." *Id.*

"The opposition of neighbors to a development project is [] a legitimate factor in legislative decisionmaking." *See Nelson*, 881 F.2d at 839 (citations omitted). At a public hearing, four Kingman residents opposed the Bennetts' extension request. (Doc. 52 at 97–

98.) They described the Bennetts' business as "an eye sore" and voiced concerns about added traffic, neighborhood safety, and diminished property values if the business was to expand. (*Id.*) The City proceeded to make "a reasoned determination that a third renewal of the permit was not in the interest of Kingman or the health, safety and welfare of its citizens." (Doc. 47 at 17.) The Bennetts have submitted no evidence to rebut this contention. Nor do the Bennetts offer facts to raise a triable issue as to whether the City's decision was rationally related to a legitimate state interest. Accordingly, the City is entitled to summary judgment on the Bennetts' substantive due process claim.

### d. Conclusion

In sum, the City is entitled to summary judgment on each of the Bennetts' federal claims. Those claims formed the basis of this Court's subject-matter jurisdiction. (FAC ¶ 5); *see also* 28 U.S.C. §§ 1331, 1343. Because the City is entitled to summary judgment on the federal claims, the Court must now determine whether it will continue to exercise supplemental jurisdiction over the Bennetts' remaining state-law claims.

### 2. State-Law Claims

A district court has discretion to decline exercising supplemental jurisdiction over state-law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "The Supreme Court has instructed that the exercise of supplemental jurisdiction should be rare when"—as here—"all federal claims have been dismissed before trial." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (O'Scannlain, J., dissenting) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27 (1966)). When exercising its discretion, the Court considers the interest in "economy, convenience, fairness, and comity." *Acri*, 114 F.3d at 1001. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Having considered the applicable factors, the Court concludes it will not exercise supplemental jurisdiction over the Bennetts' remaining state-law claims. *See Van Dusen v.*

*City of Oakland*, 678 F. App'x 582, 584 (9th Cir. 2017) (holding a district court acted within its discretion in declining to exercise supplemental jurisdiction over pendent state-law claims after dismissing all federal claims). Specifically, comity concerns weigh heavily against exercising supplemental jurisdiction. To resolve the state-law claims, the Court would be required to address the impact of the Private Property Rights Protection Act—a ballot initiative passed by Arizona voters—on A.R.S. § 12-821—which supplies the statute of limitations for "[a]ll actions against any public entity"—with respect to claims for just compensation under the Arizona Constitution. (*See* Doc. 47 at 10; Doc. 53 at 2.) In addition, the Ninth Circuit recognizes that land use planning is a "'sensitive area of social policy' that typically falls within the purview of the state." *Meritage Homes of Cal., Inc. v. City of La Verne*, No. SA CV 18-929, 2018 WL 5928124, at *4 (C.D. Cal. Aug. 23, 2018) (quoting *Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1092, 1095 (9th Cir. 1976)). Land use planning is at the heart of the Bennetts' state-law claims. Therefore, and for the reasons stated, the Court declines to exercise supplemental jurisdiction. The Bennetts' state-law claims will be dismissed without prejudice.

**IV.    CONCLUSION**

To summarize, the Court denies the Bennetts' motion for mandamus relief (Doc. 40) to the extent the request is premised on federal law. To the extent the mandamus request is premised on Arizona law, the Court declines to exercise supplemental jurisdiction. As to the summary judgment motions, the City is entitled to summary judgment on the Bennetts' federal Takings Clause and Due Process Clause claims (Counts I, IV, and V). The Court declines to exercise supplemental jurisdiction over the remaining state-law claims (Counts II, III, and VI).

Accordingly,

**IT IS ORDERED denying** the Bennetts' Request for a Writ of Mandamus Motion (Doc. 40) **without prejudice** to refiling in state court.

**IT IS FURTHER ORDERED denying** the Bennetts' Motion for Partial Summary Judgment (Doc. 48) as to their Violation of 42 U.S.C. § 1983 – Due Process claim

(Count IV) and newly alleged Equal Protection Clause claim. The Bennetts' Motion for Partial Summary Judgment (Doc. 48) is **denied as moot and without prejudice** as to their Violation of Vested Rights claim (Count III).

**IT IS FURTHER ORDERED granting in part** the City's Motion for Summary Judgment (Doc. 47) as to the Bennetts' Federal Takings Clause claim (Count I), Violation of 42 U.S.C. § 1983 – Due Process claim (Count IV), and Violation of 42 U.S.C. § 1983 – Taking Without Just Compensation (Count V).

**IT IS FURTHER ORDERED denying in part** the City's Motion for Summary Judgment (Doc. 47) as to the Bennetts' State Takings Clause claim (Count II), Violation of Vested Rights claim (Count III), and Breach of Contract claim (Count VI) **as moot and without prejudice**.

**IT IS FURTHER ORDERED dismissing** the Bennetts' State Taking Clause claim (Count II), Violation of Vested Rights claim (Count III), and Breach of Contract claim (Count VI) **without prejudice**.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment accordingly and close this case.

Dated this 14th day of June, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge